**AFFIRMED; and Opinion Filed July 25, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00873-CV

## IN THE INTEREST OF S.C. AND B.C., CHILDREN

On Appeal from the 416th Judicial District Court
Collin County, Texas
Trial Court Cause No. 416-52218-2012

## MEMORANDUM OPINION
Before Justices Myers, Stoddart, and Whitehill
Opinion by Justice Stoddart

Father appeals the final divorce decree entered by the trial court. Mother and Father have two minor children together, S.C. and B.C. In two issues, Father argues the trial court abused its discretion by making an inequitable division of the community property and by granting Mother the exclusive right to designate the children's primary residence. We affirm the final divorce decree.

FACTUAL BACKGROUND

Mother and Father are both doctors. Through an entity, Sree Medical PLLC, the parties own an urgent care clinic in Plano that Mother operates. Father is an emergency room physician who travels to different cities in Texas for work. He earns approximately $450,000 per year. The parties own two houses near the urgent care clinic: one on Meadow Ridge Drive and the other on Bexhill Drive. In the divorce decree, the trial court awarded the Meadow Ridge home

to Mother and the Bexhill house to Father.

## A. Urgent Care Clinic

Mother testified the parties started the urgent care clinic so that she could work near their home and be the children's primary caretaker. Mother explained that she works at the clinic when patients come in and, when the clinic is not busy, she returns home to care for the children. Although the clinic is not very profitable, Mother does not mind because "the kids need my attention more." She earns between $5,000 and $10,000 per month.

In his proposed property division, Father valued the clinic at $1 million. When asked whether the clinic is worth $1 million, Mother answered "[n]o way." She valued the clinic at negative $70,000 because it has a $100,000 business line-of credit.

## B. Care of the Children

Mother considers Father "neglectful" of the children. She testified that she takes the children to their after-school activities and oversees their schooling because Father works more hours and travels for his job. She stated: "it's always me with the kids, and that's the reason I really couldn't make as much money as he expects me to make." When the children have been with Father during the parties' separation, the children contact Mother several times a week and she takes them to and from school and their activities. If they need things such as school supplies, she takes them shopping and then returns them to Father. However, when the children are in Mother's custody, Father does not contact them. Father disagreed that Mother takes care of the children the majority of the time, but conceded she "sometimes" transports the children to activities during his periods of possession.

A woman who works part time at the clinic testified that Mother is "always willing to stop business to take [the children] to some school function or something." She is very loving and they get along very well. During Father's custody periods, she observed that Mother does

errands and other tasks for the children.

Father testified that the first time he and Mother separated, he arrived home from work at approximately 9:00 p.m. and found the children at home alone because Mother moved out of the house and left the children. At that time, the children were ten and twelve years' old. Delmay Matamoros, a woman who cleaned the parties' house and provided babysitting services for many years, testified that when the parties initially separated, Mother moved out of the Meadow Ridge house for four or five months, and did not visit the children during that time. Matamoros and Father cared for the children during these months. Matamoros testified that before the divorce proceedings began, she, not Mother, took the children to their after-school activities, and Father took the children to medical appointments. While Mother agreed that she moved out of the Meadow Ridge house for several months when the parties separated the first time, she stated the children visited her each day at the house where she was living.

## C.    Psychological Evaluations

Father testified he has seen changes in Mother's behavior in the preceding years. He testified that she is depressed, takes sleeping aids daily, "sleeps most of the time," and has become increasingly angry with the children. He found another person's prescriptions for hydrocodone and a muscle relaxant in Mother's closet. Mother testified she does not have a prescription drug addiction and the only medication she takes is for her thyroid. She has never taken antidepressants, but has used diet pills prescribed by her to one of her coworkers.

Father believes Mother is paranoid and carries a knife because she thinks Father is trying to kill her. She denied this allegation. Matamoros said that on one occasion she found a knife under Mother's pillow while she was making her bed. Mother does not believe she has paranoid personality traits. While she suffered from situational depression after the parties separated, she was no longer depressed at the time of trial.

As part of the divorce proceedings, Mother and Father underwent psychological evaluations. The evaluation concluded that Mother did not demonstrate any mental illness, although the testing did "suggest the presence of . . . narcissistic personality disorder with histrionic and obsessive compulsive traits and some paranoid features." Father's testing also suggested the presence of obsessive compulsive personality disorder with histrionic and narcissistic traits.

The psychologist interviewed the children as well. He noted that both parents related well to the children, the children responded very positively to each parent, and the children expressed no preference regarding with whom they wished to live.

The decree of divorce named the parents as joint managing conservators of S.C. and B.C., but gave Mother the exclusive right to designate the children's primary residence. The decree also divided the parties' community estate.

LAW & ANALYSIS

A.    Standard of Review

We review a trial court's judgment concerning conservatorship and division of property for an abuse of discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451(Tex. 1982) (conservatorship); *Reisler v. Reisler*, 439 S.W.3d 615, 619 (Tex. App.—Dallas 2014, no pet.) (division of property). A trial court's primary consideration when determining conservatorship of a child is the best interest of the child, and it has wide latitude when making that determination. *In Interest of J.R. III*, No. 05-14-00338-CV, 2015 WL 4639625, at *5 (Tex. App.—Dallas Aug. 5, 2015, no pet.) (citing TEX. FAM. CODE ANN. § 153.002 (West 2014)). Likewise, the trial court is afforded broad discretion in dividing the community estate and an appellate court must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *Id.*

A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any references to guiding rules and principles. *Gonzalez v. Gonzalez*, 331 S.W.3d 864, 866 (Tex. App.—Dallas 2011, no pet.). In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of reversible error, but instead constitute factors relevant to our assessment of whether the trial court abused its discretion. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). To determine whether the trial court abused its discretion we consider whether the trial court (1) had sufficient evidence on which to exercise its discretion and (2) erred in its exercise of that discretion. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* An abuse of discretion generally does not occur if some evidence of a substantive and probative character exists to support the trial court's decision. *Id.*

When the appellate record contains a complete reporter's record, an appellate court reviews the trial court's findings of fact under the same standards for legal and factual sufficiency that govern the review of jury findings. *Reisler*, 439 S.W.3d at 620. A legal sufficiency challenge to the findings of fact fails if there is more than a scintilla of the evidence to support the findings. *Id.* In a bench trial, the trial court acts as the fact finder and is the sole judge of the credibility of the witnesses. *Id.*

In an appeal from a bench trial, an appellate court reviews a trial court's conclusions of law de novo and will uphold them on appeal if the judgment of divorce can be sustained on any legal theory supported by the evidence. *Id.* at 619. An appellate court may not challenge a trial court's conclusions of law for factual sufficiency, but it may review the legal conclusions drawn from the facts to determine their correctness. *Id.*

**B.      Division of Property**

In his first issue, Father argues the trial court made three errors when it divided the parties' community property, resulting in a division that is not just and right: (1) the trial court incorrectly considered the business line-of-credit for Sree Medicals, PLLC as negative equity of that property and as an additional line item under community debts, which artificially inflated the community debt assigned to Mother; (2) the trial court improperly divided a TD Ameritrade account ending in #9192 in the divorce decree because the parties partitioned it pursuant to a Rule 11 Agreement; and (3) the trial court arbitrarily awarded the Meadow Ridge house to Mother.   In its findings of fact and conclusions of law, the trial court stated it considered the following factors when arriving at a just and right division of the community estate: (1) the spouse to whom conservatorship of the children is granted; (2) disparity of earning power of the spouses; (3) community indebtedness and liabilities; (4) nature of the property involved in the division; and (5) wasting of community assets.   The parties agree that the trial court awarded 57.5 percent of the community assets to Mother and 42.5 percent to Father.

The trial court shall order a division of the parties' estate in a manner that the trial court deems just and right, having due regard for the rights of each party.  TEX. FAM. CODE ANN. § 7.001; *Reisler*, 439 S.W.3d at 620.  The property division need not be equal and the trial court may consider many factors when exercising its broad discretion to divide the marital property. *Reisler*, 439 S.W.3d at 620.  Those factors include the nature of the marital property, the relative earning capacity and business opportunities of the parties, the parties' relative financial condition and obligations, and the probable need for future support.  *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981).  Mathematical precision in dividing property in a divorce is usually not possible. *Reisler*, 439 S.W.3d at 620.  The party complaining of the division of the community estate has the burden of showing the trial court's division of the community estate was so unjust and unfair

as to constitute an abuse of discretion. *Id.*

### 1. Sree Medicals, PLLC

The trial court's findings of fact place the value of Sree Medicals, the entity that owns the urgent care clinic where Mother works, at negative $70,000. The valuation is supported by Mother's testimony.

The trial court's findings of fact include a list of the parties' community property and a separate list of the community debts. The community property list shows a negative value for Sree Medicals, which reflects the $100,000 business line-of-credit. The list of community debts also includes the $100,000 line-of-credit, but the trial court noted the line-of-credit was "included in value above."

Father argues the trial court improperly assessed the Sree Medicals business line-of-credit against Mother twice, which artificially increased Mother's debt for purposes of the community debt division. He asserts the valuation of Sree Medicals should be arrived at by offsetting any value in the clinic against its $100,000 business line-of-credit, but the trial court improperly also considered the $100,000 line-of-credit in its debts of the community. Thus, he believes the trial court considered the line-of-credit twice. Father's argument is not supported by the trial court's findings. The trial court's findings of fact show the trial court assessed the business line-of-credit only once. When considering the parties' community debts, the trial court clearly recognized that its valuation of Sree Medicals for negative $70,000 included the business line-of-credit.

### 2. TD Ameritrade Account

Prior to the divorce, the parties had an account in Father's name with TD Ameritrade. While the divorce was pending, the parties entered into a Rule 11 Agreement to settle several contested matters. The Rule 11 Agreement states in part: "The TD Ameritrade Acct [sic] ending

9192 shall be divided so that each party shall have temp [sic] use and possession of 50% of said account." The divorce decree awards $166,119 from the TD Ameritrade account ending in #9192 to Mother. On appeal, Father asserts the Rule 11 Agreement partitioned the funds in the #9192 account such that all remaining money became his separate property, and the trial court erred by awarding money to Mother from the #9192 account.

There is evidence in the record to support the trial court's conclusion that the Rule 11 Agreement did not partition the #9192 account as to create separate property. At trial, Mother testified she believed the money in the account ending in #9192 was community property and the division pursuant to the Rule 11 Agreement was for the purpose of providing her access to money to pay legal fees while the divorce was pending and the division was not a partition of a community asset into separate assets. Additionally, approximately eighteen months after the Rule 11 Agreement was filed with the court, Father submitted his proposed division of assets to the trial court, which listed the #9192 account as community property. He asked the trial court to award the balance of the account to him. Mother's and Father's understanding that the #9192 account remained community property is also consistent with the terms of the Rule 11 Agreement, which stated the division was for the purpose of giving each party "temp [sic] use and possession of 50% of said account." Had the parties partitioned the account and created separate property, neither party's use would have been temporary.

Based on the evidence in the record, the trial court did not abuse its discretion by concluding the money in the #9192 TD Ameritrade account was community property and awarding a portion of the money to Mother.

### 3.    *Meadow Ridge Residence*

Father argues the trial court's division of the parties' residences is against the overwhelming evidence. The trial court awarded the Meadow Ridge house to Mother and the

Bexhill house to Father. Father asserts he should have been awarded the Meadow Ridge house and Mother should have been awarded the Bexhill house because the Bexhill house has a smaller mortgage and Mother selected and purchased the Bexhill house without consulting him.

The Meadow Ridge house is larger than the Bexhill house and it is the home where the children have lived. During the divorce proceedings, the children lived full time in the Meadow Ridge house and Mother and Father moved in and out of the house for their periods of possession. The children consider the Meadow Ridge house their home and Mother desires to raise the children in that house until they go to college.

As discussed in more detail below, the trial court's order gave Mother the right to designate the children's primary residence. The Meadow Ridge house was the children's home before Mother and Father separated and remained their home during the divorce proceedings. Mother testified she could afford the costs associated with owning the Meadow Ridge home. Thus, we conclude the trial court's decision to award the Meadow Ridge house to Mother so that the children can continue to live in the same house where they had been living is not an abuse of discretion.

### 4. Conclusion

We conclude Father has not met his burden to show the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. We overrule Father's first issue.

## C. Children's Primary Residence

In his second issue, Father argues the trial court erred by giving Mother the exclusive right to designate the children's primary residence. He asserts the evidence shows he should have been given the exclusive right to designate their primary residence because Mother abuses prescription drugs, left her children alone and did not return for several months, and attempted to

alienate the children from Father.

The trial court heard evidence that Mother works at a clinic close to her house. She is able to leave the clinic throughout the day to take care of the children. She testified she takes the children to school and to their after-school activities most of the time, including times when the children are in Father's custody. Father works longer hours and must travel for his job, which makes him less available to the children. Mother testified that when she moved out of the family home when the parties separated for the first time, the children came to the house where she was living each day.

Mother denied taking sleeping pills, prescription narcotics, antidepressants, or muscle relaxants. She denied she is paranoid and sleeps with a knife under her pillow. Although Mother's psychological evaluation suggested the presence of narcissistic personality disorder with histrionic and obsessive compulsive traits and some paranoid features, Father's evaluation also suggested the presence of obsessive compulsive personality disorder with histrionic and narcissistic traits.

Father disputed much of the evidence presented by Mother, including whether she is the primary care taker, she takes prescription medications for psychological and psychiatric problems, and she is paranoid. However, the trial court was in the best position to observe the demeanor and personalities of Mother and Father and "feel the forces, powers, and influences that cannot be discerned by merely reading the record." *In Interest of J.R. III*, 2015 WL 4639625, at *5 (quoting *In re T——*, 715 S.W.2d at 418). We defer to the trial court's determination. Further, the psychological evaluation shows that the children respond positively to both parents and did not express a preference regarding with whom they wished to live.

Reviewing the record as a whole, there is some evidence of a substantive and probative character to support the trial court's decision. We conclude trial court did not abuse its

–10–

discretion by giving Mother the exclusive right to determine the children's primary residence. We overrule Father's second issue.

CONCLUSION

We affirm the trial court's final decree of divorce.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

150873F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF S.C. AND B.C., CHILDREN

No. 05-15-00873-CV

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-52218-2012.
Opinion delivered by Justice Stoddart.
Justices Myers and Whitehill participating.

In accordance with this Court's opinion of this date, the final decree of divorce of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Uma Chintapalli recover her costs of this appeal from appellant Chandra Chintapalli.

Judgment entered this 25th day of July, 2016.