**Affirmed in part and Reversed and Remanded in part and Opinion Filed
April 20, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00575-CV**

**IN THE INTEREST OF B.N.L., H.T.L. AND A.K.L., CHILDREN**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-56250-2017**

# MEMORANDUM OPINION

Before Justices Myers, Molberg, and Garcia
Opinion by Justice Myers

In this appeal from a divorce decree, Wife appeals the division of property.

Wife brings three issues on appeal contending (1) the trial court abused its discretion by excluding the testimony and report of Wife's expert witness; (2) insufficient evidence supports the trial court's findings of fact concerning the characterization of certain property as Husband's separate property; and (3) the trial court abused its discretion by awarding Husband a disproportionate share of the community property. We reverse the trial court's division of the community estate and remand for a new division. In all other respects, we affirm the trial court's judgment.

The issues in this case concern the trial court's characterization of the parties' property and the distribution of the community estate.

## BACKGROUND

The parties married January 18, 2003. They had three children during the marriage. During the marriage, they bought a house using Husband's separate property for the down payment. Husband's parents made gifts to help remodel and landscape the house. Husband's parents also made gifts of cash and stock.

Wife filed for divorce on November 3, 2017. Husband did not timely answer, and Wife moved for a default decree of divorce. The trial court signed a default judgment for Wife, but the court later granted Husband's motion for new trial and set aside the judgment. Husband filed a counterpetition for divorce.

After Wife filed for divorce, Husband transferred some shares of stock that his father had gifted to him into custodial accounts for each of the three children with Husband controlling the assets.

Following a trial before the court, the court granted the divorce on the ground of insupportability. *See* TEX. FAM. CODE ANN. § 6.001. The court named the parties joint managing conservators, ordered that Wife had the exclusive right to designate the primary residence of the children, and ordered Husband to pay child support.[1]

---

[1] The parties have not appealed the portions of the decree granting the divorce and making orders concerning the conservatorship, possession, and support of the parties' children.

Concerning the characterization and division of the parties' property, the trial court determined that a portion of the parties' house was Husband's separate property and the rest was community property. The court also determined that the gifts from Husband's parents were gifts to Husband and were his separate property. The Court determined that Husband had sole and exclusive control of the children's custodial accounts and that he had to provide yearly account statements to Wife. The court also determined that certain investment accounts were Husband's separate property but that the debt from margin loans on those accounts was community debt. The court distributed the community property between the parties, including awarding Husband both his separate-property and the community-property interest in the house. The court ordered each party to pay his or her attorney's fees.

## EXCLUSION OF WIFE'S EXPERT WITNESS

In her first issue, Wife contends the trial court erred by excluding the testimony and report of her expert witness, Larry Settles. Husband moved to exclude Settles' report and testimony because he was not timely designated. The trial court granted Husband's motion and ordered "that Larry Settles may not testify at the trial of [t]his matter and it is further ORDERED that any testimony regarding the opinions and mental impressions of Larry Settles may not be introduced at the trial of this matter."

We review a trial court's exclusion of an expert witness's testimony for an abuse of discretion. *Gunn v. McCoy*, 554 S.W.3d 645, 666 (Tex. 2018). A trial court abuses its discretion by failing to follow guiding rules and principles. *Id.*

Rule of Civil Procedure 195.2 requires a party seeking affirmative relief to designate "all experts" ninety days before the end of the discovery period. TEX. R. CIV. P. 195.2(a). The discovery period ends "30 days before the date set for trial, in cases under the Family Code." TEX. R. CIV. P. 190.3(b)(1)(A). In this case, the trial began on November 4, 2019. Therefore, the discovery period for this suit under the Family Code ended thirty days earlier on October 5, 2019, which was a Saturday, and therefore was extended to the following Monday, October 7, 2019. *See* TEX. R. CIV. P. 4; *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 543 (Tex. App.—Dallas 2005, no pet.). Wife's designation of Settles as an expert witness was due ninety days before that, on July 9, 2019.

A party designates experts by furnishing the information requested under Rule 194.2(f):

(1) the expert's name, address, and telephone number;

(2) the subject matter on which the expert will testify;

(3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

(4) if the expert is retained, employed by, or otherwise subject to the control of the responding party:

–4–

> (A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and
>
> (b) the expert's current resume and bibliography . . . .

TEX. R. CIV. P. 194.2(f) (2020).[2]

Wife disclosed some information about Settles in her discovery response on February 18, 2019:

> (1) Lord & Settles, LLC, Larry T. Settles, Jr., CPA, ABV, RFL CRFAC, MAFF, Investigative Accounting and Business Valuation [address, phone number, e-mail]
>
> (2) Financial Expert retained by Petitioner [Wife] for investigative, forensic and other professional services related to the marital property, separate or community.
>
> (3) Larry T. Settles, Jr. will testify as to his experience and qualifications, he may testify related to his investigative, forensic, and other professional consulting services provided in connection with this case as a testifying expert and as to the valuation and characterization of some financial accounts, his expert opinion about the information, opinions or reports related to any other CPA or testifying expert retained by Respondent, including but not limited to reviewing tracing and related documents of Respondent's experts. Petitioner will supplement as Mr. Settles['] opinions and impressions are not formed or are in the process of being formed as he is awaiting reports and tracing documents from Respondent's attorney related to Mr. Rice's [Husband's expert witness's] tracing.
>
> Larry Settle[s], Jr. will testify that his fees: $250.–$350.00; his staff $150–$200.00 per hour and assistants $80.00–$100.00 per [hour] is a

---

[2] Effective January 1, 2021, which was after the trial in this case, Rule 194.2 was amended, and the text of Rule 194.2(f) was moved to Rule 195.5. *See* 84 Tex. B.J. 149, 157 (Feb. 2021) (Final Approval of Amendments to Texas Rules of Civil Procedure 47, 99, 169, 190, 192, 193, 194, 195, 196, 197, and 198). We cite to and quote the rule as it existed before the revisions.

reasonable hourly rate for his services for the work performed, hours incurred and cost incurred at trial.

(4) CV will be supplemented.

These disclosures provided the information required by paragraphs (1) and (2) of Rule 194.2(f), but they did not provide the information required by paragraph (3) for a retained expert: "the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them." Wife acknowledged as much in her response where she states, "Petitioner will supplement as Mr. Settles['] opinions and impressions are not formed or are in the process of being formed."

The record shows Wife first disclosed information presenting some of Settles' mental impressions and opinions in a letter with a summary of a report on the evening of October 8, 2019, the day before Husband took Settles' deposition. Settles further disclosed his mental impressions and opinions the next day at his deposition. These disclosures were 26 and 27 days before trial, which was after the discovery period had closed and almost three months after the parties' disclosures were due under Rule 194.2(f). Wife's counsel admitted at the hearing on the motion to exclude that she did not produce Settles' report until after the deadline. We conclude Wife did not timely designate Settles as an expert as required by Rules 195.2 and 194.2(f).

Discovery that is not timely disclosed and witnesses that are not timely identified are inadmissible as evidence "unless the court finds that:

–6–

(1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a). "The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness." TEX. R. CIV. P. 193.6(b). Thus, Wife had the burden of showing good cause or that her late disclosures of Settles' mental impressions and opinions did not surprise or unfairly prejudice Husband. "A finding of good cause or lack of unfair surprise or unfair prejudice must be supported by the record." *Id.*

Wife argues she had good cause for the untimely filing as shown by her "Motion for Leave to Reopen Discovery Limited Purpose." In that motion, Wife's attorney explained that her father had been put in the hospital on October 5, 2019, and that she became ill on October 6 and 7, 2019. The trial court could reasonably conclude this explanation did not provide good cause for Wife's failure to comply with the expert-designation requirements by the deadline of July 9, 2019, which was almost three months before the events mentioned in the Motion for Leave to Reopen Discovery.

Wife also argues the record establishes lack of prejudice or surprise because Husband knew in February that Wife had identified an expert for the purpose of rebutting Husband's expert testimony at trial. Wife asserts, "No evidence of unfair surprise or unfair prejudice to Husband exists on the face of the record; the only

–7–

unfair prejudice that occurred was to Wife when the trial court excluded the testimony and report of her expert rebuttal witness by not granting her leave to supplement." The fact that Husband was able to depose Settles does not mean there was no surprise or prejudice from the late disclosures. Husband's counsel received Settles' report the evening before the deposition, which was a few weeks before the start of the trial. At the hearing on the motion to exclude, Husband's counsel told the trial court, "Mr. Settles' opinions have some bearing on the tracing. And if my expert wants to come in and make any kind of tweaks or changes or revisions based on his opinion, we have very little time to do that." Wife's counsel told the trial court that she produced something about Settles' opinions in March 2019, but Wife's counsel was unable to open the document to show the court what was produced. Husband's counsel told the trial court that whatever Wife produced in March was not the report and was not Settles' opinions.

Wife had the burden of establishing Husband suffered no surprise or unfair prejudice. Based on the record before us, we conclude Wife has not shown the trial court abused its discretion by determining Wife failed to meet that burden.

Wife also argues that even if she did not meet that burden, the trial court could have granted a continuance or temporarily postponed the trial to allow Wife to amend or supplement her discovery responses and to allow Husband an opportunity to conduct discovery regarding the information presented by the response. *See* TEX. R. CIV. P. 193.6(c). However, Wife made no such request in the trial court regarding

–8–

Settles' testimony, and Wife cites no authority requiring a trial court to *sua sponte* grant a continuance or postpone a trial.

We overrule Wife's first issue.

## CHARACTERIZATION OF PROPERTY

In her second issue, Wife contends the trial court erred by determining certain of Husband's financial assets were his separate property and that certain debts were debts of the community.

This case was tried before the court, and the court filed findings of fact and conclusions of law. A trial court's findings of fact are reviewable for the legal and factual sufficiency of the evidence supporting them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). However, in family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standard of review; as a result, legal and factual insufficiency are not independent grounds of reversible error, but instead constitute factors relevant to our assessment of whether the trial court abused its discretion. *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.); *see Beaumont Bank N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) ("Whether there was no evidence to support the turnover award would, of course, be a relevant consideration in determining if the trial court abused its discretionary authority in issuing the order."). Accordingly, to determine whether the trial court abused its discretion because the evidence is legally or factually

insufficient to support the trial court's decision, we engage in a two-pronged inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion? *Boyd*, 131 S.W.3d at 611; *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.). The applicable sufficiency review comes into play with regard to the first question. *Boyd*, 131 S.W.3d at 611. We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable. *Id.*; *Lindsey*, 965 S.W.2d at 592.

Property possessed by the spouses at the time of divorce is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a). A trial court's finding of separate property must be supported by clear and convincing evidence. *Id.* § 3.003(b). When the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of legal and factual sufficiency review. *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002); *Boyd*, 131 S.W.3d at 611. Clear and convincing evidence is defined as that "measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *Boyd*, 131 S.W.3d at 611. This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980);

*Boyd*, 131 S.W.3d at 611. The proof must weigh more heavily than merely the greater weight of the credible evidence, but the evidence need not be unequivocal or undisputed. *Boyd*, 131 S.W.3d at 611.

In reviewing the evidence for legal sufficiency, we look at all the evidence, in the light most favorable to the judgment, to determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding was true. *In re J.F.C.,* 96 S.W.3d at 265–66. We must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* at 266. In reviewing the evidence for factual sufficiency, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *In re C.H.,* 89 S.W.3d at 25; *Boyd,* 131 S.W.3d at 611.

Whether property is separate or community property is determined by the facts that, according to rules of law, give character to the property. *Moroch v. Collins*, 174 S.W.3d 849, 855 (Tex. App.—Dallas 2005, pet. denied). Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character. *Id.* When separate property has not been commingled or its identity as such can be traced, the statutory

presumption is dispelled.  *See Estate of Hanau*, 730 S.W.2d 663, 667 (Tex. 1987).

When tracing separate property, it is not enough to show that separate funds could

have been the source of a subsequent deposit of funds.  *Moroch*, 174 S.W.3d at 855.

As a general rule, mere testimony that property was purchased with separate funds,

without any tracing of the funds, is insufficient to rebut the community presumption.

*Id.*  Any doubt as to the character of property should be resolved in favor of the

community estate.  *Id.* at 856.

Wife contends the evidence is legally and factually insufficient to support the

trial court's findings that gifts from Husband's parents during the marriage were

Husband's sole separate property, that certain financial accounts are Husband's

separate property, and that debts incurred during the marriage are community debts

even though the debts are margin loans on investment accounts that the trial court

found were Husband's separate property or were debts from IRS tax liens on

Husband's business and investments.

### Gift of Stock from Husband's Father

In 2007, Husband's father transferred shares of a company's stock into an

account owned by Husband.  At that time, the stock had a value of about $264,000.

In 2018, after Wife filed her petition for divorce, Husband set up a custodial account

for each of the parties' three children, and he transferred the stock shares into those

accounts.  Husband testified he "gifted" the stock into the children's accounts.

–12–

Husband's father testified that all of the gifts from him, including the gift of the stock, "were intended exclusively for" Husband.

Wife contends on appeal that the following findings of fact are not supported by clear and convincing evidence:

> 16. During the marriage, [Husband] received the following property as a gift, which is now in accounts for the children, with the values shown:
>
>     a. Charles Schwab Account x5125    $71,579.76
>
>     b. Charles Schwab Account x7633    $71,605.50
>
>     c. Charles Schwab Account x9742    $71,576.76

These were the custodial accounts for the children into which Husband transferred the stock given to him by his father.

Wife's disagreement with the finding appears to be with the determination that Husband, and not Husband and Wife, received the stock as a gift. Wife does not appear to argue that the property was not separate property; instead, her contention appears to be that the court should have found the gift was fifty percent to her.[3] Husband's expert witness on tracing the accounts, Bryan Rice, testified that if the gift of the stock had been given to Wife as well as to Husband, then Wife

---

[3] Wife's contention is not clear. Her brief sets out a standard of review and lists facts, but her brief provides little analysis applying the law to the facts. To the extent Wife may mean to argue on appeal that the gift of stock was a gift to the community estate, she is incorrect. By definition, a gift is separate property. *See* FAM. §§ 3.001(2), 3.002. Therefore, there can be no gift to the community estate. *See Long v. Long*, 234 S.W.3d 34, 39 (Tex. App.—El Paso 2007, pet. denied). A gift of property to both spouses results in each spouse having a one-half separate-property interest in the gifted property. *See id.* It appears to be uncontroverted that Husband's father's transfer of the stock to Husband was a gift. In the interest of justice, we will presume Wife means to argue that the evidence does not support the trial court's determination that the gift was only to Husband and not also to her.

–13–

would have lost her right to half of the stock, but he testified he did not think that was the situation. Husband's father testified the gift of the stock was to Husband "exclusively," and Husband testified he gifted the stock to the children. Wife testified Husband's father gave the stock to both of them and not just to Husband. Wife's testimony conflicted with Husband's and his father's testimony about who was the donee of the gift of stock. The trial court, as the trier of fact, determined the credibility of the witnesses and the weight to be given their testimony, and we must assume that the court resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *In re J.F.C.,* 96 S.W.3d at 266. The trial court's findings of fact show the trial court resolved this conflict in Husband's favor.

After reviewing the record, we conclude the trial court had sufficient evidence to exercise its discretion concerning whether Wife was a donee of Husband's father's gift of the stock. The evidence was sufficient for the trial court as finder of fact to have reasonably formed a firm belief or conviction that the stock Husband placed in the custodial accounts for the children was solely his separate property. Wife has not shown the trial court abused its discretion. We overrule Wife's second issue as to the custodial accounts.

### Charles Schwab Accounts x2339 and x1992

Wife contends the trial court abused its discretion by determining the assets in Charles Schwab accounts x1992 and x2339 were Husband's separate property and not community property.

Wife contends the following findings are not supported by clear and convincing evidence:

[Husband] owns the following separate property with the values shown:

. . . .

    c. Charles Schwab IRA x2339            $638,478.16

. . . .

    e. Charles Schwab Account x1992       $321,921.20

The trial court also made the following conclusions of law concerning the accounts:

All the property belongs to the community estate except for:

a. the following, which belongs to [Husband's] separate estate:

. . . .

    3. Charles Schwab IRA x2339           $638,478.16

. . . .

    5. Charles Schwab Account x1992      $321,921.20

The parties married in January 2003. The record contains the account statements for these accounts. The January 2003 account statement for x1992 states the account was opened in 1995 and that it had a value on January 1, 2003 of $147,736.64. The January 2003 account statement for x2339 states the account was opened in 1992 and that it had a value on January 1, 2003 of $402,217.60.[4] By 2019, x1992 had increased in value to $321,921.20, and x2339 had increased in value to

---

[4] The account statements set out the account value on January 31, 2003, but they also set out the change in value in the account since January 1, 2003 and the amount of the "Cash & Sweep Money Market Funds." Combining these amounts yields the value of the accounts on January 1, 2003.

638,478.16. Rice testified he traced the funds in those accounts and that they preexist the parties' marriage. He testified the accounts were not commingled with community assets "except for reinvestments." He testified that many of the stocks in the accounts did not pay dividends. He also testified that dividends and interest earned by the accounts were immediately removed from the accounts and spent on community expenses.

Wife points out that Rice did not have account statements for "seventeen" of the months, a period of "July to October"[5] of unidentified years during the parties' seventeen-year marriage. Rice's report says that statements for x1992 and x2339 were missing for July to October 2018, a period of four months.[6]

Rice testified the missing statements did not affect his ability to trace the separate-property character of the accounts "because we had established a pattern over 15 years of money going out of this account as fast as it went in."

Wife's attorney asked Rice,

> But there's 17 months of statements that are missing. So, how do you know what happened to—during that period? Couldn't it have been purchased—couldn't an asset have been purchased that's still in existence today, such as the transfer of money into the kids' accounts?

Rice answered, "It's possible."

---

[5] July of one year through October of the next year is sixteen months.

[6] Rice's report also says that statements were missing for eighteen months, from March 2004 to August 2005, but the report does not identify which accounts were missing statements for those months. The record contains the statements for those months for accounts x1992 and x2339, and Wife does not assert those statements were missing from Rice's analysis of those accounts.

Whether four months of statements were missing as Rice's report stated or sixteen or "17 months" as Wife's attorney stated without contradiction by Rice, Rice could not have traced the allegedly separate accounts back to the beginning of the marriage. For the extended period of four, sixteen, or seventeen months for which there were no account statements, Rice simply assumed that the parties followed the "established pattern" of removing income earned by the account without withdrawing any of the separate property funds, but he did not testify to any actual knowledge that the parties followed that "established pattern." Husband could have filled in the gaps created by the missing account statements by testifying about what happened with the accounts during that period, which was just over a year before trial, but Husband did not do so. With no evidence of what happened with the accounts during this four-, sixteen-, or (as Wife's attorney called it) 17-month period, we conclude Husband failed to adequately trace the separate-property character of the accounts. During that period, any number of transactions could have occurred affecting the amount of separate property in those accounts. As the party seeking to establish the separate character of the accounts, it was Husband's burden to prove with clear and convincing evidence that no transactions occurred affecting the separate character of the accounts and proving the amount of separate property in the accounts. As this Court has stated, any doubt as to the character of property should be resolved in favor of the community estate. *Moroch*, 174 S.W.3d at 856. Because of the missing statements, the trial court, as the trier of fact, could not have

reasonably formed a firm belief or conviction that the accounts contained only separate-property funds as Rice testified and as the trial court found.

We conclude the evidence is legally insufficient to support the trial court's findings and conclusion that the assets in Schwab accounts x1992 and x2339 were Husband's separate property. We sustain Wife's second issue as to those accounts.

**Community Debts**

Wife argues that no evidence or factually insufficient evidence supports the trial court's findings:

19. During the marriage [Husband and Wife] incurred the following debts with the values shown:

    a. Loan against Charles Schwab Account x2339    $243,050.60

    b. Loan against Charles Schwab Account x1992    $11,952.33

    . . . .

    e. 2018 Tax Lien (as of 10.29.18)    $24,804.88

    f. 2007 Tax Lien    $17,474.29

The trial court's conclusions of law included: "All of the debts belong to the community estate, except for [Wife's] student loans, which belong to [Wife's] separate estate." This conclusion of law determined that the tax liens and the margin-loan debt of the Schwab accounts were debts of the community estate.

"It is well established that debts contracted during marriage are presumed to be on the credit of the community and thus are joint community obligations, unless it is shown the creditor agreed to look solely to the separate estate of the contracting

–18–

spouse for satisfaction." *Cockerham v. Cockerham*, 527 S.W.2d 162, 171 (Tex. 1975).

Rice testified that Husband, during the marriage, borrowed money using the accounts' margin-loan provisions to pay community expenses, including paying the family's credit-card debt. Rice's report was admitted into evidence. The report listed many of the transactions using the margin loans. Wife does not identify any transaction that was not a community expense. Wife testified that Husband used the margin loans to purchase investments, but Wife did not point to any evidence in Rice's report or in the financial records that he did so. Furthermore, any purchases of investments with the margin debt during the marriage would have been purchases benefitting the community estate. Wife did not show that the margin debt predated the marriage. To the extent Wife's testimony controverted Husband's and Rice's testimony, Rice's report, and the financial records, the trial court was the judge of the credibility of the witnesses and the weight to be given their testimony, and the trial court resolved the conflict in Husband's favor. *See In re J.F.C.,* 96 S.W.3d at 266 ("To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so."). Rice testified that the creditor, Charles Schwab, had not "agreed to look solely to the separate estate of [Husband] for satisfaction." *Cockerham*, 527

–19–

S.W.2d at 171. We conclude Wife failed to rebut the presumption that the loans are debts of the community estate. *See id.*

Concerning the tax liens, Wife testified "there was a tax lien on the house . . . for tax year 2007," and that the 2007 lien was "for [Husband's] unpaid taxes from the year 2007," which was after the parties married. Wife does not dispute that the 2018 tax lien was for unpaid taxes incurred after the parties married. "These debts, therefore are presumptively community debts." *Jackson v. Jackson*, No. 05-01-01719-CV, 2002 WL 31513388, at *2 (Tex. App.—Dallas Nov. 13, 2002, no pet.). Wife presented no evidence that the IRS had agreed to look solely to Husband's separate property to pay the taxes.

We conclude the trial court had sufficient evidence to determine whether Wife proved by clear and convincing evidence that the IRS tax liens and the margin loans on the Schwab accounts were not debts of the community, and the trial court did not abuse its discretion by determining Wife did not meet that burden.

We overrule Wife's second issue as to the trial court's characterization of the debts.

## PROPERTY DIVISION

In her third issue, Wife contends, "Without sufficient evidence to support its findings, the trial court abused its discretion by making a disproportionate award of community property in favor of Husband."

In a divorce decree, "the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." FAM. § 7.001. Citing Black's Law Dictionary, the supreme court has defined "just" as meaning "legally right; lawful; equitable"; "right" as meaning "that which is proper under law, morality, or ethics"; and "due regard" as meaning "the attention, care, or consideration that is just, proper, regular, and reasonable." *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (plurality opinion) (footnotes and internal punctuation omitted). "In the end, the court is to do complete equity as between the husband and wife and the children, having due regard to all obligations of the spouses and to the probable future necessities of all concerned." *Id.* (internal punctuation omitted).

When exercising its broad discretion to divide the community estate, the trial court may consider many factors, including the nature of the marital property, the relative earning capacity and business opportunities of the parties, the parties' relative financial condition and obligations, the parties' education, the size of the separate estates, the age, health, and physical conditions of the parties, fault in breaking up the marriage, the benefits which the party not at fault would have received had the marriage continued, and the probable need for future support. *See Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.). The division of a

community estate need not be equal; there must only be a reasonable basis for the division. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d at 384.

We review the trial court's division of a community estate for an abuse of discretion. *Moroch*, 174 S.W.3d at 857. A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *LaFrensen v. LaFrensen*, 106 S.W.3d 876, 877 (Tex. App.—Dallas 2003, no pet.).

Wife argues the trial court erred by awarding the residence entirely to Husband. She also argues the trial court erred by awarding Schwab accounts x1992 and x2339 to Husband because they were "mixed character" accounts. She also argues the court erred by awarding Husband the custodial accounts for the children containing the stock gifted to Husband by Husband's Father because the stock was half her separate property.

Concerning accounts x1992 and x2339 and the custodial accounts, Wife argues the trial court's distribution was an abuse of discretion because the trial court erred by characterizing these assets as Husband's separate property. As discussed under Wife's second issue, the trial court mischaracterized the assets in accounts x1992 and x2339 but did not mischaracterize the custodial accounts.

Wife also asserts the trial court abused its discretion by awarding the marital residence entirely to Husband. The house was 8.47 percent Husband's separate property and 91.53 percent community property. Wife does not argue that the house

was mischaracterized. Nor does she explain why the award of the house to Husband resulted in a division that was not just and right. Wife argues that the trial court's mischaracterization of property affected a just-and-right division of the community estate. Because Wife does not argue that the house was mischaracterized, these arguments do not apply to the trial court's award of the community interest in the house to Husband.

The trial court's distribution of the community estate did not include the assets in Schwab accounts x1992 and x2339 because the court erroneously determined those accounts were Husband's separate property. Applying the values in the trial court's findings of fact and conclusions of law to the assets and debts of the community estate as found by the trial court, the community's net value was $446,841.60. The divorce decree distributed $218,167.19 of net value to Wife and $228,674.41 to Husband. Husband received net value of $10,507.22 more than Wife, which was about 2.35 percent of the community estate's net value.

However, the trial court's omission from the community estate of the assets in Schwab accounts x1992 and x2339 affects these calculations. The trial court found account x1992 had assets of $321,921,20 and account x2339 had assets of $638,478.16, together totaling $960,399.36. Adding these assets into the community estate makes the community's net value $1,407,240.96, and the net value of the distribution to Husband $1,189,073.77. This distribution gives Husband 84.5 percent of the community estate and Wife only 15.5 percent of the community estate.

None of the factors discussed above supports such a disproportionate division. The trial court did not find that either party was at fault for the breakup of the marriage. Instead, the court found the marriage had "become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marital relationship and prevents any reasonable expectation of reconciliation." *See* FAM. § 6.001. The trial court did not find, and the evidence does not support finding such a heavily disproportionate award just and right based on the nature of the marital property, the relative earning capacity and business opportunities of the parties, the parties' relative financial condition and obligations, the parties' education, the size of the separate estates, the age, health, and physical conditions of the parties, and the probable need for future support. *See Murff*, 615 S.W.2d at 699.

Because of the mischaracterization of accounts x1992 and x2339, we conclude the trial court's distribution of the community estate was not just and right and was an abuse of discretion. We sustain Wife's third issue.

## CONCLUSION

Having concluded that the trial court did not make a just and right division of the community estate, we must remand the entire community estate for a new division. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985). We reverse the portion of the trial court's judgment that divides the community estate, and we affirm the trial court's judgment in all other respects.

We remand the case to the trial court for new division of the community estate consistent with this opinion.

200575f.p05

/Lana Myers//
LANA MYERS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

IN THE INTEREST OF B.N.L., H.T.L. AND A.K.L., CHILDREN

No. 05-20-00575-CV

On Appeal from the 429th Judicial District Court, Collin County, Texas Trial Court Cause No. 429-56250-2017.
Opinion delivered by Justice Myers. Justices Molberg and Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment that divides the community estate. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** the case to the trial court for a new division of the community estate consistent with this opinion.

It is **ORDERED** that appellant Janelle Nicole Landry recover his costs of this appeal from appellee Theodore Stanley Landry.

Judgment entered this 20th day of April, 2022.