**Affirmed in Part, Reversed in Part, and Remanded; Opinion Filed June 1, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00219-CV**

**IN THE INTEREST OF H.B.R., A CHILD**

**On Appeal from the 469th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-56844-2017**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Nowell

Father appeals from the trial court's custody determinations in this divorce proceeding. In four issues, Father argues the trial court abused its discretion by finding he spoliated evidence, that without the spoliation sanction the evidence is insufficient to support the trial court's deviation from the standard possession order, and that the court abused its discretion by awarding attorney's fees to Mother based on the spoliation sanction. We conclude the trial court abused its discretion by sanctioning Father for spoliation of evidence and that the error was harmful. We reverse the conservatorship, access and possession, and attorney's fee award

portions of the divorce decree and remand for a new trial. In all other respects, we affirm the divorce decree.

## Background[1]

Mother and Father married on July 8, 2014. H.B.R. was born in December 2014. Mother filed for divorce in December 2017. Father filed a counter petition for divorce shortly afterwards.

At Father's deposition on February 12, 2018, the attorneys for the parties dictated their agreement into the record that Father would not delete any content on five specific electronic devices "until a later date that we can determine the computers can be imaged." In March 2018, Father's electronic devices were imaged by his expert, Lance Sloves. The images of the electronic devices created by Father's expert were produced to Mother's expert in July 2018.

After additional motions and hearings regarding the production of electronic devices and the scope of discovery, the trial court signed an order on July 13, 2018 requiring Father to turn his electronic devices over to Mother's expert, Graciela Rubio, for imaging and inspection. In October 2018, the trial court issued an order

---

[1] Writing this opinion presents an unusual problem because salient parts of the record are under a sealing order that we must respect. *Kartsotis v. Bloch*, 503 S.W.3d 506, 510 (Tex. App.—Dallas 2016, pet. denied). However, we also must hand down a public opinion explaining our decisions based on the record. *See* TEX. R. APP. P. 47.1, 47.3 (all opinions are open to the public and must be made available to public reporting services); TEX. GOV'T CODE ANN. § 552.022(a)(12) ("final opinions, including concurring and dissenting opinions, and orders issued in the adjudication of cases" are "public information"). Accordingly, we have made efforts to preserve the confidentiality of the information and avoided references to as much information as possible that is part of the sealed record. *See Masterguard, L.P. v. Eco Techs. Int'l LLC*, 441 S.W.3d 367, 371 (Tex. App.—Dallas 2013, no pet.).

limiting Rubio's examination of the forensic images of the devices to searching for files containing vulgar, profane, obscene material of a sexual nature with individuals that could potentially be minors, images and videos of a pornographic nature with activity associated with the file after April 24, 2009, and any evidence of activity indicating the deletion of information.

Mother filed a motion for sanctions for spoliation of evidence on May 30, 2019. She alleged Father breached the agreement announced at his deposition by deleting information on his iPad and MacBook Pro. She alleged that Father executed an application called Dr. Fone Erase on May 16, 2018 to delete data from his iPad and moved some fifteen thousand program and user files to the "trash" folder on his MacBook Pro.

The trial court conducted a hearing on the motion for sanctions for spoliation of evidence on July 31, 2019. Father's expert, Sloves, was not available but the trial court assured Father he would have an opportunity to present his evidence at a later time. Father testified that he purchased Dr. Fone Recover as part of a suite of applications that also included Dr. Fone Erase. The entire suite was downloaded automatically, but Father paid for and received an activation code only for Dr. Fone Recover. Father purchased the Dr. Fone Recover application in January 2018 because he wanted to see if Mother had put software on his devices, as she had done in the past. Father admitted that he did delete certain things after his deposition, such

as voicemails and downloaded movies, but did not delete anything Mother claimed was relevant to the case.

Rubio testified that she made forensic images of Father's devices in July 2018 and analyzed them pursuant to the court's October order on protocol. She determined that Dr. Fone Erase was installed on Father's iPad as part of the Dr. Fone suite in April 2018 and was executed on May 16, 2018. Dr. Fone Erase was still in the trial version, but it was executed on the iPad. Rubio testified that she has tested the Dr. Fone application before but not in this case. She was not able to recover any files erased by Dr. Fone Erase and did not know what was deleted by the application.

Rubio also compared her forensic images from July with Sloves's images from March and determined that approximately fifteen thousand program and user files on Father's MacBook Pro had been moved to the "trash" folder between March 5, 2018 and the time she imaged the device in July 2018. Rubio testified the files were not permanently deleted and she could still access them.

Two weeks before trial, the trial court signed an order granting the motion for sanctions and found that Father engaged in intentional and willful spoliation of evidence by deleting files and executing the Dr. Fone Erase application. The order states the court "presumes that the evidence would have been unfavorable to the cause of [Father]."

Father filed a motion to reconsider the spoliation order shortly before trial. The trial court decided to carry the motion with the trial. At trial, Mother testified

that Father was excessively secretive about his electronic devices and that she had seen "a penis picture" on his computer. Mother also testified that before they were married, Father told her that in 2002 he went to Cleveland Ohio for a conference and also to meet with someone he met in a chat room. He was arrested for soliciting a minor but the arrest was expunged. Father told her the person was female but later admitted they were male.

The trial court heard evidence that Father sexually abused his cousin, S.R., from age eight or nine until S.R. was fifteen. S.R. testified that Father sexually abused other cousins. S.R. testified from prison where he was serving a felony sentence. The court-appointed child-custody evaluator initially recommended a tiered schedule of unsupervised possession and access for Father ending with expanded standard possession. She was questioned extensively about the spoliation order and how it impacted her recommendation. She testified that in light of the court's spoliation sanction, she did not have confidence in relying on Father's self-reported information that she was unable to verify. Without the spoliation sanction, however, her recommendation would be the same. The evaluator's supervisor also testified that based on the spoliation ruling, the credibility of Father's self-reports had been undermined and the supervisor did not have the same level of confidence about the evaluator's recommendations.

Mother's expert on child sexual-abuse allegations interviewed S.R. and some of his family members and concluded his allegations against Father were credible.

She did not interview Father or the child in this case. She concluded that the child would be at risk in the unsupervised care of Father.

The trial court also heard testimony from a licensed sex-offender treatment provider that tests performed on Father showed a normal arousal pattern for adult and adolescent females and did not show any arousal patterns to children. The expert did not find any evidence to show Father was "pedophilic which would represent a risk to the child."

Father denied sexually abusing S.R. Father admitted that in 2002, when he was twenty-four, he had oral sex with a person called Ian who was under the age of eighteen. Father testified that Ian was either sixteen or seventeen at the time but was above the age of consent in jurisdiction where the conduct occurred. Father also admitted that he had sexual contact with "very few, one or two possibly," persons who were under the age of eighteen while he was over the age of eighteen.

Father testified that during the marriage he met four men on Grindr, a dating website. He invited the men to his home where they had sexual contact. With one exception, Father did not know the exact age of the men. Father testified that H.B.R. was in school during the times he met with these men and she was never around anyone he met through social media.

Lance Sloves testified as an expert in forensic computer analysis with a background and training in identifying and recovering evidence of child pornography in criminal and civil matters. Sloves made forensic images of Father's

devices in March 2018 and analyzed them to identify any type of illegal images, communications, or activity related to child pornography or improper attempts to communicate with children. He did not find anything on the devices consistent with child pornography or improper communications. He testified that it would be almost impossible to hide such evidence if it existed.

Sloves also tested the Dr. Fone application. He purchased only the Dr. Fone Recover application and downloaded the application. The download included four modules, Recover, Erase, and two others. Sloves did not have the option to download only the Recover application. Sloves ran the Erase product and it "went to the end and then stated that if you want to erase the data off the phone, you'll need to purchase an additional module." He confirmed that the Erase software would not allow him to erase data without purchasing the module. When the Erase program would not allow him to go further, he shut the Erase program down and it left behind a log. Sloves concluded based on his testing that Father did not delete anything using the Dr. Fone Erase application.

The trial court signed a final decree of divorce on November 7, 2019. The court appointed Mother and Father as joint managing conservators, found that good cause existed to deviate from the Standard Possession Order, and ordered that Father's periods of possession would be supervised at all times. The trial court also awarded Mother $32,000 in attorney's fees, with conditional appellate attorney's fees.

At Father's request, the trial court signed findings of fact and conclusions of law.

**Standard of Review**

We review a trial court's imposition of sanctions for spoliation for an abuse of discretion. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). We also review a trial court's decision regarding child custody, control, possession, and visitation for an abuse of discretion. *Jacobs v. Dobrei*, 991 S.W.2d 462, 463 (Tex. App.—Dallas 1999, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.).

A spoliation analysis involves a two-step judicial process: (1) the trial court must determine, as a question of law, whether a party spoliated evidence, and (2) if spoliation occurred, the trial court must assess an appropriate remedy. *Brookshire Bros.*, 438 S.W.3d at 14. To conclude that a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so. *Id.* The party alleging spoliation has the burden of establishing that the nonproducing party had a duty to preserve material and relevant evidence and breached that duty either negligently or intentionally. *See id.* at 20–21.

On finding that spoliation occurred, the trial court must exercise its discretion to impose an appropriate sanction, considering the spoliating party's culpability and the prejudice to the nonspoliating party. *Id.* at 21; *see also Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 488–89 (Tex. 2014). As with any discovery sanction, the sanction must be proportionate; it must relate directly to the conduct giving rise to the sanction and must not be excessive. *Brookshire Bros.*, 438 S.W.3d at 14, 21–22. While a trial court's discretion to remedy an act of spoliation is broad, it is not limitless. *Petroleum Sols.*, 454 S.W.3d at 489. The trial court must consider the availability of lesser sanctions and, "in all but the most exceptional cases, actually test the lesser sanctions." *Id.* (quoting *Cire v. Cummings*, 134 S.W.3d 835, 841 (Tex. 2004)).

Because the abuse of discretion standard in family law cases overlaps the traditional sufficiency standard of review, legal and factual sufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *In re A.B.P.*, 291 S.W.3d at 95; *Peck v. Peck*, 172 S.W.3d 26, 33 (Tex. App.—Dallas 2005, pet. denied). To determine whether the trial court abused its discretion because the evidence is insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *Vardilos v. Vardilos*, 219 S.W.3d 920, 921 (Tex. App.—Dallas 2007, no pet.). We conduct the applicable sufficiency review with regard to the first question. *A.B.P.*, 291 S.W.3d

at 95; *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We then proceed to determine whether, based on the evidence, the trial court made a reasonable decision. *Moroch*, 174 S.W.3d at 857. If some evidence of a substantive and probative character exists to support the trial court's decision, there is no abuse of discretion. *In re C.C.J.*, 244 S.W.3d 911, 917 (Tex. App.—Dallas 2008, no pet.).

Findings of fact made after a bench trial are of the same force and dignity as a jury's verdict upon special issues. *In re C.H.C.*, 392 S.W.3d 347, 349–50 (Tex. App.—Dallas 2013, no pet.). The trial court's findings of fact are reviewable for factual and legal sufficiency of the evidence under the same standards as applied in reviewing the sufficiency of the evidence supporting a jury's answer to a special issue. *Id.* at 350. In determining whether there is legally sufficient evidence to support a finding, we examine the record and credit evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In a factual sufficiency review, we consider the entire record and will set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Cameron v. Cameron*, 158 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied).

**Analysis**

**A. Spoliation finding**

Father argues that the trial court abused its discretion by finding that he spoliated evidence from his electronic devices and by imposing a sanction of presuming Father was in possession of illegal pornographic material and engaging in inappropriate sexual contact with underage individuals. Father contends that without the spoliation sanction, the evidence does not support the trial court's determination that deviation from the standard possession order and supervised visitation for Father were in the best interest of the child.[2]

In its findings of fact and conclusions of law,[3] the trial court found that Father either intentionally or negligently breached his duty to preserve evidence on his electronic devices. Further, the court found that had the evidence been preserved it would have shown that Father was in possession of "illegal pornographic materials and was engaging in inappropriate sexual contact with underage individuals." In addition, the court determined that the facts that Father was in "possession of illegal pornographic materials and was engaging in inappropriate sexual contact with underage individuals were taken to be established for purposes of the trial" due to

---

[2] Our harm analysis necessarily overlaps a sufficiency review of the evidence without the spoliation sanction. Because we conclude the error probably resulted in the rendition of an improper judgment, we also conclude the trial court abused its discretion by ordering supervised possession even if it were possible to ignore the spoliation finding. Therefore, we do not discuss Father's second issue separately.

[3] Father challenges several specific findings of fact and conclusions of law. We discuss these findings in general in light of the sealed record.

–11–

Father's spoliation of evidence. The court cited these spoliation findings among the reasons for its deviation from the standard possession order.

Mother based her motion for spoliation sanctions on the agreement announced on the record at Father's February 2018 deposition.[4] That agreement provided that Father would not delete any content on his devices until they could be imaged. It is undisputed that Father's expert imaged his devices in March of 2018 and those images were later provided to Mother's expert. Mother's only evidence of spoliation was that Dr. Fone Erase was executed in May 2018 and the files on Father's MacBook Pro were moved to the trash folder sometime after Sloves imaged the devices. There is no evidence Father deleted any content on his devices before they were imaged by Sloves. Based on the agreement announced at Father's deposition, Father's duty to preserve evidence on his devices extended until those devices were imaged. Because there is no evidence that Father deleted any content on his devices before they were imaged, the trial court abused its discretion by concluding he spoliated evidence.

But assuming Father's duty to preserve information extended beyond the agreement not to delete data until the devices could be imaged, the evidence does not support the severe sanction of presuming that father intentionally destroyed

---

[4] Both parties were served with a standing order of the Collin County District Courts, which prohibited the parties from, "Destroying, disposing of, or altering any e-mail, text message, video message, chat message, or other electronic information relevant to the suit." Mother did not rely on this order in her motion for sanctions for spoliation of evidence.

–12–

evidence of possession of illegal pornography and engaging in inappropriate sexual contact with underage individuals. The sanction is excessive because there is no evidence in this record that would support a reasonable inference that such evidence was present on Father's devices before the alleged spoliation occurred.

In many spoliation cases there is some evidence of the existence and general nature of the spoliated evidence. *See Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 918 (Tex. 2015) (per curiam) (video recordings on charter bus involved in collision); *Petroleum Sols.*, 454 S.W.3d at 485–86 (allegedly faulty flex-connector in diesel fuel piping system); *Brookshire Bros.*, 438 S.W.3d at 15 (surveillance video in slip-and-fall case); *In re J.H. Walker, Inc.*, No. 05-14-01497-CV, 2016 WL 819592, at *2 (Tex. App.—Dallas Jan. 15, 2016, orig. proceeding) (tractor trailer involved in fatal single vehicle collision). In this case, however, there is no evidence that child pornography or sexual communications with minors were present on Father's devices before or at the time of the alleged destruction of that evidence.

Significantly, Sloves created forensic images of Father's devices before any alleged spoliation occurred and those images were made available to Mother's expert. Sloves analyzed the images he made and found no evidence they contained child pornography or improper communications with children. Rubio, whose analysis under the October protocol order included searching for obscene material involving minors and pornography, never disputed Sloves's testimony and never testified that child pornography or improper sexual communications with children

–13–

existed on Father's devices at the time they were imaged by Sloves. Mother has never claimed and offered no evidence that such material was placed on Father's devices after the devices were imaged and then deleted.

Rubio testified the Dr. Fone Erase application was executed in May 2018 and deleted data from Father's iPad. However, she admitted that Dr. Fone Erase was still in the trial version and she did not test the application in this case. There is no evidence she attempted to execute the trial version of Dr. Fone Erase to determine whether it would actually delete existing data from the device. Sloves did test the free version of Dr. Fone Erase and testified it would not allow him to erase data without purchasing an additional module.

Rubio testified that fifteen thousand files were moved to the trash folder on the MacBook Pro after Sloves imaged the device. But she admitted those files were still accessible to her and had not been permanently deleted. She never testified and Mother offered no other evidence that any of those files contained child pornography or evidence of inappropriate sexual contact with underage individuals.

Mother's testimony that she saw inappropriate pictures on Father's devices was conclusory and her subjective opinion. She gave no underlying facts to support her opinion of inappropriateness other than that she saw "a penis picture" on his devices. Without more, any inference that the devices contained illegal pornographic material would be unreasonable. An inference premised on mere surmise or suspicion is not reasonable. "[S]ome suspicion linked to other suspicion produces

–14–

only more suspicion, which is not the same as some evidence." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 210 (Tex. 2002)). S.R.'s testimony that he viewed pornography with Father fifteen to twenty years earlier does not support a reasonable inference that illegal pornography existed on Father's devices in 2018. And while the trial court was free to disregard Father's testimony that he did not have illegal pornography or communications with minors on his devices, that would not create probative evidence that such material was on his devices. *See Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005) (holding that even if court disbelieved party's testimony she did not receive notice of trial setting "that would not provide affirmative evidence that service occurred"). "When the testimony of a witness is not believed, the trier of fact may simply disregard it. Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984).

We conclude there is no evidence in this record that Father's devices contained illegal pornographic material or evidence of inappropriate sexual contact with underage individuals at the time of the alleged spoliation. Even if the trial court concluded that Father deleted data in violation of a duty to preserve that data, the sanction imposed was excessive. We conclude the trial court abused its discretion by finding Father spoliated evidence and presuming he was in possession of illegal

–15–

pornographic material and engaging in inappropriate sexual contact with underage individuals due to his alleged spoliation of evidence.

## B. Harm

An error is reversible if it probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a). In determining whether the erroneous spoliation findings were harmful, we review the entire record and require the appellant to demonstrate that the judgment turns on the particular evidence admitted. *Brookshire Bros.*, 438 S.W.3d at 29. The trial court's findings establishing facts based on spoliation of evidence is akin to a spoliation instruction to a jury. If a spoliation instruction should not have been, "the likelihood of harm from the erroneous instruction is substantial, particularly when the case is closely contested." *Id.* (quoting *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 724 (Tex. 2003)). A spoliation instruction—or, as in this case, a presumed factual finding—can be "tantamount to a death-penalty sanction." *Id.* at 23.

The record shows this case was hotly contested and highly emotional. Under the trial court's amended temporary orders, Father's possession and access was supervised throughout most of the case. At trial, Mother's counsel placed significant emphasis on the spoliation issue in opening statement and closing arguments. Several witnesses were questioned about the impact of the spoliation finding on their opinions regarding Father's possession of the child and whether his visitation should be supervised or not. Witnesses testified that if the trial court's spoliation finding

remained in place their confidence in Father's statements about prior incidents would be undermined and they would likely change their recommendations. Mother's counsel at one point questioned a witness about Mother's concern that Father deleted "thousands upon thousands of files that contain sexually explicit images." But as discussed above, there was no evidence that Father deleted files containing sexually explicit images. Mother's "concern" was based on mere surmise or suspicion, not evidence.

In some cases the spoliation issue may be peripheral in a lengthy trial. *See Knoderer v. State Farm Lloyds*, 515 S.W.3d 21, 40–41 (Tex. App.—Texarkana 2017, pet. denied) (finding harmless error where spoliation evidence was a small fraction of testimony in eight-day trial, not addressed in opening statements, and mentioned only briefly in closing argument). But that is not the case here. Throughout opening and closing arguments and questioning of multiple witnesses in this two-day trial, spoliation was repeatedly emphasized. Based on the spoliation finding, the court found as an established fact that Father was in possession of illegal pornographic material and engaged in inappropriate sexual contact with underage individuals. The spoliation findings were a significant part of the trial court's findings of fact and conclusions of law and a basis for the court's decision to deviate from the standard possession order.

Mother points to other evidence she contends could support the trial court's decision, relying primarily on S.R.'s testimony. In essence, Mother contends the trial

–17–

court could have ignored the spoliation evidence and exercised its discretion based on other evidence. However, the trial court's express findings of fact belie this argument. The trial court specifically relied on the finding that Father spoliated evidence to deem that Father was in possession of illegal pornography and engaging in inappropriate sexual contact with underage individuals and relied on those deemed facts as reasons for deviating from the standard possession order. Given the extensive emphasis on spoliation throughout this hotly contested two-day trial, we conclude that the error probably caused the rendition of an improper judgment. *See Smith v. Williams*, No. 06-14-00040-CV, 2015 WL 3526089, at *10 (Tex. App.—Texarkana May 29, 2015, no pet.) (finding harm where there was significant emphasis on the spoliation issue in opening and closing statements and throughout trial testimony).

We sustain Father's first two issues.[5]

## C. Attorney's fees

In his fourth issue, Father argues the trial court's award of attorney's fees should be reversed and remanded in light of the erroneous spoliation sanction. As described in this opinion, the trial of the conservatorship and possession issues was

---

[5] Father's third issue challenges the sufficiency of the evidence to support a single evidentiary finding by the trial court. Because the finding is not a controlling finding supporting the judgment, the issue is not dispositive and we do not discuss it. *See* TEX. R. APP. P. 47.1; *see also Guillory v. Dietrich*, 598 S.W.3d 284, 290 (Tex. App.—Dallas 2020, pet. denied) (disregarding findings on evidentiary matters instead of on controlling issues); *In re Marriage of Edwards*, 79 S.W.3d 88, 94–95 (Tex. App.—Texarkana 2002, no pet.) (trial court should make findings only on ultimate or controlling issues rather than mere evidentiary issues).

permeated with evidence of spoliation. Because we are not reasonably certain that the trial court's attorney's fee determination was not significantly affected by the errors regarding the spoliation findings, we sustain this issue. *See Young v. Qualls*, 223 S.W.3d 312, 314–15 (Tex. 2007) (per curiam); *Baltzer v. Medina*, 240 S.W.3d 469, 478 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

## Conclusion

We conclude the trial court abused its discretion by imposing a spoliation presumption and that the error probably resulted in the rendition of an improper judgment. Accordingly, we reverse the conservatorship, access and possession, and attorney's fees portions of the trial court's final decree of divorce and remand for further proceedings. In all other respects, we affirm the final decree.

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE

2000219f.p05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF H.B.R., A
CHILD

No. 05-20-00219-CV

On Appeal from the 469th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 469-56844-
2017.
Opinion delivered by Justice Nowell.
Justices Reichek and Carlyle
participating.

In accordance with this Court's opinion of this date, the final divorce decree
of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE**
the conservatorship, access and possession, and attorney's fees portions of the trial
court's final decree of divorce. In all other respects, we **AFFIRM** the final decree
of divorce. We **REMAND** this cause to the trial court for further proceedings
consistent with this opinion.

It is **ORDERED** that appellant D.R. recover his costs of this appeal from
appellee M.B.L.-R.

Judgment entered this 1st day of June, 2022.